### WEATHERLY et al. v. MANATT.

No. 8459—Opinion Filed March 11, 1919.

(179 Pac. 470.)

(Syllabus.)

**1. Assault and Battery—Forcible Eviction—Damages.**

Where a landlord forcibly attempts to evict a tenant, and the tenant uses no greater force than is necessary to prevent eviction, and is thereupon assaulted by the landlord and injured, the landlord is liable in damages for all injuries received by the tenant growing out of the assault.

**2. Damages — Future Pain and Suffering—Proof.**

Future pain and suffering may be established: (1) Where the injury is objective and it is plainly apparent from the nature of the injury that the injured person must of necessity undergo pain and suffering in the future, the jury may infer that fact from proof of such an injury alone. (2) Where the injury is subjective to warrant a jury to return a verdict for future pain and suffering, there must be produced expert evidence that the plaintiff with reasonable certainty will experience future pain and suffering as a result of the injury.

Error from District Court Garfield County; James B. Cullison, Judge.

Action by Laura Woodworth, Guy S. Manatt, administrator, being substituted on her death, against E. B. Weatherly and another. Verdict and judgment for plaintiff, and defendants bring error. Affirmed.

Parker & Simons, for plaintiffs in error.

W. H. Hills for defendant in error.

PITCHFORD, J. On the 8th day of June, 1915, Laura Woodworth commenced this action against the defendants, E. B. Weatherly and Jesse Weatherly, for the purpose of recovering damages for injuries alleged by plaintiff to have been received by reason of an assault and battery committed upon her by the defendants on the 23d day of August, 1914. On the day of the difficulty, plaintiff was occupying a house which was owned by the defendant E. B. Weatherly, and had gone into the possession thereof with the consent of the owner. The plaintiff had been ordered to vacate the premises prior to this time, but had refused and failed so to do. On the date of the alleged assault, the defendants had gone upon the premises for the purpose of looking after certain live stock, and while there had occasion to visit the house for certain articles which they needed in their work. Upon reaching the house, they found the doors locked and demanded admittance, which was refused by the plaintiff. The defendants tried the front door, but were unable to open the same. They then went to the rear and succeeded in lifting the latch to the screen door, and were thereby enabled to enter the house. After entering, the defendant Jesse Weatherly secured a bucket and left. The defendant E. B. Weatherly went to the dining room door, which he found closed, pushed the same open, and found the plaintiff lying upon a cot. He approached the plaintiff and began cursing her, grabbed her by the arm, jerked her to her feet, and stated that he was going to throw her out of the house; struck her with his fist, knocked her down, dragged her over the room, by her foot, threw her against the machine. That the defendant Jesse Weatherly in the meantime had returned to the house. That he also assaulted the defendant. That he jerked her, threw her on the floor, pressed his knees on her breast. That as a result of the assault she had two ribs broken; her breast caved in; her head was injured. That she suffered great pain and agony, was confined to her bed under the care of physicians for two weeks. That, by reason of the injuries so received, diabetes had developed and that she had been injured in the sum of $10,000.

The defendants deny the allegations of the petition as to their being the aggressors, but allege that they found the doors locked; that the plaintiff was not entitled to the exclusive possession of the premises; that they desired to enter the building for the purpose of securing a bucket; that the defendant E. B. Weatherly went into the dining room, where he found the defendant reclining on a cot; that, as soon as he entered the room,

the plaintiff dashed carbolic acid in his face, which would have resulted in blinding him had he not involuntarily closed his eyes; that the carbolic acid burned him severely; that the plaintiff was still advancing upon him; that he grabbed her and held her so that she could not do him any further injury; that, while the struggle was going on, the defendant Jesse Weatherly entered the room and, seeing the condition of his father from the effects of the carbolic acid, took hold of the plaintiff and informed his father that he would hold her while he looked after his burns; that they used no more force than was necessary to protect the defendant E. B. Weatherly from the attacks of the plaintiff.

The cause was tried to a jury on February 9, 1916, resulting in a verdict in favor of the plaintiff in the sum of $1,000. The defendants appeal and assign as error:

First. That the court below erred in overruling the motion, made by the defendants below at the close of the plaintiff's evidence, requesting the court to limit the issues in said cause and any recovery by the plaintiff to any acts complained of by her that occurred prior to the time when she threw the carbolic acid into the face of the defendant E. B. Weatherly.

Second. That the court erred in overruling the demurrer of the defendants to the evidence of the plaintiff.

Third. That the verdict of the jury is contrary to law.

Fourth. That the verdict of the jury is contrary to the evidence in the case.

Fifth. That the court erred in refusing to give to the jury instructions requested in writing by the defendants.

Sixth. That the court below erred in giving to the jury instructions in writing to which the said defendants objected and excepted.

Seventh. That the verdict of the jury is excessive and was returned under influence of passion and prejudice.

Eighth. That the court erred in its ruling upon the admission and rejection of evidence in said cause.

Ninth. That the court erred in overruling the motion of the defendants for a new trial.

The first, second, third, and fourth specifications of error will be considered together. The contention of the defendants is that the question of damages should be limited to the acts complained of by the plaintiff, which occurred prior to the time she threw the carbolic acid into the face of the defendant E. B. Weatherly. Defendants claim that the evidence of the plaintiff shows that she was in no way injured by anything done by the defendants prior to the time she threw the acid; that, even if the testimony of the plaintiff were true and the defendants did in fact take hold of her and pull her up from the cot upon which she was lying, it would be a mere simple assault; that she does not claim any actual damages for such an act, but only seeks to recover substantial damages for the acts which occurred after she threw the carbolic acid into the face of E. B. Weatherly, as she herself admits.

As we view the evidence in the case, the difficulty was one entire transaction. The plaintiff was in possession of the premises under authority of the owner. The defendants found that she had locked the doors. She refused to allow them to enter. They forced an entrance. They had asked for a bucket, which she had refused to let them have. After the entrance was gained, the defendant Jesse Weatherly secured the bucket and left the house. The defendant E. B. Weatherly then entered the dining room at the time occupied by the plaintiff, and found her lying on the cot. The evidence of the plaintiff is that he used profane, violent, and indecent language; that he grabbed her by the arm, jerked her to her feet, called her a "damned old bitch," and said, "I will throw you in the street." He dragged her across the room, and, as she passed the table, she saw a bottle, grabbed it, and threw it at him. Who was the aggressor? Certainly not the plaintiff. If the plaintiff had been a man, would the defendants, being refused admittance and finding the doors locked, have attempted to gain an entrance by forcing the doors? Would they not naturally have expected, under those circumstances, that, instead of being met by a bottle of carbolic acid, they probably would have been looking into the muzzle of a six-shooter or a shotgun?

The fact that the plaintiff was an old woman gave the defendants no more authority to forcibly evict her than if she had been a man occupying the premises. The law does not allow anyone, owner or any one else, to gain possession of premises by this highhanded method. If defendants had desired the possession of the premises, and the eviction of the plaintiff, they had their clear legal remedies. The defendants invited the difficulty, and as a consequence, cannot claim the law of self-defense. The plaintiff was in possession of the premises by the permission of the owner. She had a right to defend that

possession against all persons, including the owner. As is well said by the court in the case of Armstrong v. State, 11 Okla. Cr. 159, 143 Pac. 870:

"'A man's house, however humble, is his castle; and his castle he is entitled to protect against invasion.' And a man in his own habitation has a right to resist force with force and repel the entrance against his will of one who in a violent manner attempts to enter for the manifest purpose of assaulting or offering violence to him, or to inmates under his protecting care, even to the extent of taking life, if it be acutally or apparently necessary to do so in order to prevent such unlawful entrance."

It therefore follows that the defendants, being the aggressors, were liable for all the damages sustained by their unlawful conduct, either before or after the throwing of the carbolic acid.

The remaining assignments of error will be considered under one head. We have examined carefully the authorities presented by the defendants on trespass and self-defense, but hold that they are not applicable to the case at bar. Instruction No. 11 given by the court and excepted to by the defendants is as follows:

"If you find from the evidence that the plaintiff is entitled to recover in this action, you are instructed that the damages recoverable for bodily pain and suffering are not limited to that which is past, if the proof renders it reasonably certain that the plaintiff must suffer in the future, and, in estimating the pecuniary loss, all the consequences of the injury, future as well as past, including bodily pain, which is shown by the proof to be reasonably certain, will necessarily result from the injury, are to be taken into consideration by you in arriving at the amount that you believe the plaintiff is entitled to recover, if any, not exceeding the sum of $10,000."

The defendants complain of this instruction for the reason that the injuries claimed to have been received by the plaintiff were subjective at the time of the trial and she had no injuries of any kind or character which could be seen by the jury and from which they could draw the conclusion that she would undergo future pain and suffering; and cite a number of authorities upon this question, holding that subjective injuries can only be proven by the testimony of experts, and that there was an entire absence of competent evidence as to the injuries from which the jury could draw the conclusion of future pain and suffering, the injuries not being objective but subjective.

We will notice the case of Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 Pac. 230, cited by defendants, wherein this subject is exhaustively discussed. The court said:

"There are two rules by which the question of future pain and suffering may be submitted to the jury: If the injury is objective and it is plainly apparent, from the very nature of the injury, that the injured person must of necessity undergo pain and suffering in the future, then most certainly the plaintiff would not be required to prove a fact so plainly evident, and upon making proof of such an objective injury the jury may infer pain and suffering in the future. * * * Where the injury is subjective, and of such nature that laymen cannot, with reasonable certainty, know whether or not there will be future pain and suffering, then, in order to warrant an instruction on that point, and to authorize a jury to return a verdict for future pain and suffering, there must be offered evidence by expert witnesses, learned in human anatomy, who can testify, either from a personal examination or knowledge of the history of the case, or from a hypothetical question based on the facts, that the plaintiff, with reasonable certainty, may be expected to experience future pain and suffering, as a result of the injury proven."

In the case at bar, Dr. W. F. Nay, testifying for the plaintiff, stated that the first examination he made revealed two of the plaintiff's ribs were out of alignment, being bent inward and having the appearance of being fractured, the effect of this condition being a shock to the nervous system and painful breathing; that plaintiff had diabetes, which could be caused by licks on the head and shocks to the nervous system; that diabetes in this case was the result of injury or shock to the nervous system; that he found all the symptoms of diabetes in the plaintiff and that plaintiff would never recover from this disease; that her injuries, so far as diabetes was concerned, were permanent. This evidence on the part of the physician fully meets every requirement contained in the authorities presented by the defendants on this question. It is stated in the brief that the defendants were among the most respectable citizens of Garfield county. The defendant E. B. Weatherly had been treasurer of the county for two terms; the son, at the time of the trouble, was bookkeeper in the First National Bank in the city of Enid. The defendant E. B. Weatherly weighed 180 pounds; the defendant Jesse Weatherly was 23 years of age and weighed 170 pounds. Being men occupying the respectable position that the defendants did when they had their cause tried to a jury of the county,

where they were well known, we cannot for a moment be persuaded that the jurors were influenced by prejudice or passion. On the contrary, it would appear, under the evidence in the case, that the jury did all in their power to shield and protect the defendants, and that the only consideration that saved the defendants from a greater judgment probably was the fact that the jurors knew them, appreciated their standing in the community, and were charitable with them in assessing the amount of damages, for otherwise the verdict, under the evidence before the jury, would have been for the full amount sued for.

The evidence discloses an old woman, 86 years of age, assaulted by two robust, able-bodied men, weighing respectively 180 and 170 pounds; jerked from her cot, knocked to the floor, dragged over the room, choked, two ribs broken, breast caved in, nervous system shocked to the extent of producing diabetes, from which she died in three months after the trial.

The verdict of the jury in assessing $1,000 damages, with all this evidence before them, will not be disturbed by this court unless manifest error is shown to have been committed by the trial court.

The judgment of the lower court is in all things affirmed.

All the Justices concur, except KANE, J., who concurs in the conclusion reached, but dissents from the doctrine announced in the second subdivision of the second paragraph of the syllabus.